0 9-11 31 Peter v. Javier Epeline Oh, and by the way, please identify yourself when you step up to the podium. And, uh, that's not really a microphone, it's a pretend microphone. It's picking up something in the back, but, uh, keep your voice up, please. Yes, ma'am. May it please the court, my name is Julianne Johnson, and I represent Javier Luna. I raised three issues in my opening brief, but I will primarily be discussing the first issue, although I'll, of course, answer any questions the court has on the remaining issues. What's your last name again? Johnson. Thank you. And I would like to spend about 10-15 minutes on my opening and reserve a few moments for rebuttal. Under the People v. Steve Vincenzo, an involuntary manslaughter instruction is warranted where there is some evidence, however slight, to support giving the instruction. Here, there was some evidence that Mr. Luna acted recklessly when he acted deliberately while disregarding the risks of his conduct in response to a perceived threat on his life. It was reckless for Mr. Luna to turn while holding a knife and stab the person behind him, who he saw as a shadow approaching with a bottle in a threatening manner, after hearing someone yell, watch out, without first assessing the situation to see if it did actually call for such deadly force. Well, counsel, let's talk about that. What evidence is there of reckless behavior other than his testimony? There is his testimony. There's also the testimony of Maria Lopez and other people who were at this party that there was an initial – Were they eyewitnesses? I'm sorry? They were eyewitnesses to the event? Yes. Yes, they were. This was a party or a gathering of a few people, eight or nine, and initially there was a conflict between the two roommates who lived at the apartment, Mariel and Daniel. It was a verbal altercation, and Daniel got a knife from his room, returned, and stabbed Mariel once in the abdomen and in the arm. Mariel was bleeding. At that time, the defendant went to the kitchen and grabbed, according to his testimony, the first thing he saw to protect himself, which was a knife from the sink. When he returned, Daniel had been pushed into his room, where he had originally retrieved the knife from before he stabbed Mariel. But not – and, excuse me, when Daniel did stab Mariel, he did make a threat to everyone at the party, saying, no one is going to leave here. But didn't the defendant say that he was attempting to scare the person? That's your argument relative to the reckless conduct. Yes, well, he – once he had returned with the knife, Daniel had been put in his room by that time, but the defendant felt that there was an ongoing threat, and he saw a shadow lurching over him from behind with a bottle or weapon, as the defendant perceived it, in his hand, raised, and then someone yelled, watch out. The defendant turned because he was scared, and he did not know who was approaching behind him, had no particular reason to hurt this person other than the perceived threat. And so in turning and stabbing without looking, our argument is that that was reckless conduct. All right, how does it jibe with People v. Jackson, which talks about the mental state is only known to the defendant and no one else testifies relative to that as reckless conduct? I mean, how can we justify that – giving them that instruction? Right, well, under People v. Serbs, the First District case, there was – excuse me – the court did find that, based on the defendant's testimony alone, that that can be sufficient in order to constitute some evidence of reckless conduct. And also there's some language in Di Vincenzo, which states something similar, just that the jury is in one of the best positions to make a determination as to the defendant's mental state. Okay. So is this a discussion of plain error? Yeah, we are arguing under plain error. Using Rule 451C, which covers the jury instructions and when there's an error in giving the jury instructions. Okay, what about the second prong of plain error? Can you discuss that? Closely balanced. Okay. Yes, we – our argument is that the – which you touched upon earlier, the defendant's testimony and as the judge of credibility, the jury is able to judge the credibility of the defendant and they at least took some of his – they at least found some of the defendant's evidence – or excuse me – testimony to be credible. In finding for secondary murder rather than first-degree murder, they found that there was mitigating circumstances in that his unreasonable belief that this force was justified. And our argument is that if they were given another very crucial third option, which is discussed in both Robinson and Upton as being very crucial for the jury to have this option where there is some evidence of recklessness, that they perhaps would have found that this was reckless conduct rather than unreasonable self-defense. And although the state does argue that the involuntary manslaughter instruction was not warranted here because the defendant argued self-defense at trial, under both Whiters and Robinson, self-defense and involuntary manslaughter are not mutually exclusive. This is because in defending oneself, one does not invariably intend to kill. So although it is a deliberate act, that does not mean that it cannot be a reckless act. You know, a reckless act is deliberate. And... Was this a case where the jury also instructed on first-degree murder? Yes. Yes, they were. Both first-degree and second-degree, and they found the mitigating circumstance did exist with the unreasonable belief. Thank you. Yes. And also, under People v. DiVincenzo, there are certain factors listed out that a court must consider when deciding whether or not to give this instruction. And Tainter, People v. Tainter, first-degree case also added to that a factor of whether or not the victim and the defendant were intoxicated at the time. And according to the testimony, both the defendant and the victim, but especially the defendant, had been drinking beer all day and was on cocaine. So if... Counsel, can we get to the sentencing issues and your argument relative to the sentence and how the court was mistaken in using an aggravation effective at death? Yes. Yes, absolutely. Yes, so we argued in the second issue that the court used an improper aggravating factor in that the court did not merely mention, as the state argues, Alfredo's death in deciding the sentence. He actually said, well, one aggravating factor is serious bodily harm, and here the victim has died, and I'm taking that into account. And courts have found that where the court, on the record, has said that they are considering an improper aggravating factor, then a reviewing court can't just assume... The statutory range on second degree? Four to 20 years, yes. So the sentence was within the statutory range? It was, and it was at the maximum. How can you... I mean, how do you come to this, leap to this conclusion that that was a factor considered by the judge as opposed to just a statement about... I mean, is there some kind of mystery here? There's somebody's dead. No, you're incorrect. But there were, as in People v. Joe, which was cited in our brief, where court found that where the sentencing court noted that the defendant's conduct both threatened and caused serious harm to the victim, it was improper to consider that because the end result of the defendant's conduct in a murder case is always going to be death. And so, and the legislature, you know, is assumed to have taken that into account in determining the statutory ranges for the different crimes. So it's improper for the court to include that or to weigh that additional aggravating factor that's already inherent in the offense. And there were other bits of aggravation that the court considered in the sentence as well, though, were there not? There were some, there were some, yes. But again, where the court considers and mentions a factor on the record in handing down the sentence, it cannot be presumed that the improper factor didn't have a role in the sentence, especially here where they did, the court did give the maximum sentence, where here the defendant had no criminal record. He had served in the military in Mexico. He was very young at the time. He was only 23 at the time of the offense. And he did say he had no intent to kill. He only wanted to scare the person. He felt this threat. And he expressed extreme remorse. During both his, you know, during his statements to police, he said he couldn't sleep. During his testimony, he said he was very sorry that this happened and in addressing the court as well. Could that be considered harmless? The court maybe just was imprudent in making the statement that I considered an aggravation, just poor choice of words by the court? Well, I don't believe that it was harmless error in this case, especially where the defendant did receive the maximum sentence in light of these very significant mitigating factors, including his entire lack of criminal history, which is one of the most significant mitigating factors. And again, where the court has said on the record  when murder was the offense, we can't presume that that didn't play a significant role in the court's decision. Okay, if there are no other questions, we would ask that the... Well, if it goes back, let's say it goes back because the court shouldn't consider death, but it goes back and the court says we considered all mitigating and aggravating circumstances and sentences 20 years. Well, if that does happen, then, which is one of the things we are asking for, that it be remanded to in front of a different judge under Hyder so that that judge can definitely... or, you know, use your power to reduce the sentence. You're asking for us to not only remand it back, remand it back with directions that it go to a different judge? Yes, there are... And what's the basis for that? Just to make sure that this wasn't improperly... When a judge does consider something improperly... So this new judge is going to have to hear a new trial? No, there's... Essentially, he's going to have to hear everything, he or she, going to have to hear everything about this case before he or she proposes or sentences this defendant. Well, it's... I mean, sentencing is one of the most important stages, and we feel that it's critical that the judge consider the proper factors when making a sentence, and here it was not clear that the judge did not consider the improper factors. So you could argue the 431B is zero issues or not? No, unless you have questions on it. Okay, thank you. And we ask that the court reverse and remand. Thank you very much. Carefully. Morning, Your Honors. My name is Brad Dickey, and I'm an assistant state's attorney at the Cook County State's Attorney's Office, and I represent the people of the state of Illinois. May it please the Court. In this case, it cannot be said that the trial court erred in instructing the jury as to involuntary manslaughter. While giving a jury instruction is a matter within the sound discretion of the trial court, and while a defendant is entitled to an involuntary manslaughter instruction, if there is evidence, however slight in the record, upon which a given theory could be based, there must be some evidence of recklessness in a given case. In this case, it cannot be said that an involuntary manslaughter instruction was warranted. From the very beginning of this case, the defendant, Javier Luna, maintained that he intentionally stabbed the victim, Jose Vasilio Miranda, in self-defense. In his answer to discovery, he indicated that he would be presenting the affirmative defenses of self-defense and the defense of others. In opening statements and closing arguments, his trial counsel indicated that this was a case of self-defense. There simply was not any evidence in this case of reckless behavior, notwithstanding the defendant's contention. As to the evidence in this case, as far as where Mr. Luna indicated that the knife slipped out of his hand or that he was scared when he turned around and it was an accident, we believe that that does not show evidence of reckless behavior, but in fact shows evidence of an accident. As the defendant states in his brief, reckless behavior requires a volitional act. All criminal offenses require a volitional act. What you have with the statements that the defendant made to the police and also at trial is not evidence of volitional act, but evidence of an accident. He was saying that his behavior was such that he should have been found not guilty of all charges, not that he should have been found guilty of involuntary manslaughter. Counsel, can I ask you, what about your opponent who argues that someone said, watch out, and he turned around and there was a shadow there, and that was the reckless behavior, just making that quick move and injuring someone? Well, that's, again, evidence of an accident. That's not evidence of reckless behavior. I mean, he continually, during his testimony, indicated that he did that because he was afraid for his life. He wasn't saying, well, I just accidentally turned around and swung the knife. He's saying, I saw a shadow behind me at a bottle. I was afraid for my life. And he said it repeatedly throughout the course of his testimony, which indicates that he did that in self-defense, not that it was reckless behavior. On the other end of the spectrum, the evidence at most can indicate that it was an accident, not that it was evidence of reckless behavior in this case. Furthermore, as far as the giving of the jury instruction, the defendant did not raise this issue in a post-trial motion, which indicates that the issue is forfeited and is reviewed under plain error, which means that not only should any complaint of error in this case relating to the jury instruction, although it would normally be reviewed for an abuse of discretion in this particular matter, any complaint of error would have to be clear and obvious from the record, which, as far as this issue is concerned, it's our stance that this issue is not clear and obvious from the record. In fact, it's very tenuous from the record as to whether this could even be considered reckless conduct in this case. In fact, all the evidence in this case tends to show not that the defendant acted recklessly, but that he acted intentionally. With the testimony of Villavaro-Castillo and Mariel Lopez, you have testimony that the defendant, after Daniel was taken into the bedroom and the door was closed, the defendant even admitted in his testimony that the threat at that time was inside the bedroom. He then goes into the kitchen, grabs a knife, and as far as Villavaro-Castillo's testimony was concerned, he said that the defendant grabbed a knife, his cousin took it away, hid it behind a TV. He then went and grabbed another knife in the kitchen, where he was further away from the threat, came back into the living room, where the victim was standing defenselessly at this point, and stabbed him in the chest. And the evidence shows that, as far as the medical examiner is concerned, that there were no defensive wounds on the victim. The victim was merely standing outside of Mariel Lopez's bedroom when he was stabbed in the chest by the defendant. The testimony further shows that the victim was not involved in the argument between Daniel and Mariel. And that, as far as any evidence of the defendant concerning the shadow, this was something that he brought up for the first time at trial and not to the police officers. And then you have the medical examiner's testimony again, shows that the defendant plunged this knife into the victim's chest. This was an 8-inch knife, which caused the victim's death that same evening. After the defendant stabbed the victim, he then ran out of the house with his cousin and his brother, drove around, got some beer, went back to his cousin's house and drank beer until he was picked up by the police officers. Even when he was picked up by the police officers, he didn't tell them that he stabbed the victim. In fact, he said that Mariel did it. And it wasn't until the police talked to Mariel and Leopardo and the other individuals who were at the party that the defendant finally admitted that he stabbed the victim. And yes, he did mention in his testimony that, well, my hand got away from me. But then after he said that, he then said, well, actually I did it because Mariel wanted to get even. Then he said he did it because he was angry. Counselor, can I ask you, relative to the plain error analysis here, as far as the closely balanced first prong and the second prong, can you tell us what your opinion is there? Well, Your Honor, the evidence in this case is not closely balanced. I mean, the defendant admitted that he stabbed the victim. There's no question that the defendant committed a murder in this case. In fact, the jury believed that the defendant committed a murder in this case but found that there was the mitigating circumstances that existed, that it was an unreasonable belief in self-defense. As to the fundamental issue, this doesn't rise to the level of fundamental unfairness in this case. There's no evidence in this matter that the defendant was prejudiced by the failure of the judge to give this jury instruction when the defendant asked for the secondary murder instruction and he got a secondary murder conviction in this case. And as I already stated, there's just simply no evidence in this case of reckless conduct on the part of the defendant that would warrant an instruction like that. So as to the involuntary manslaughter instruction issue, we would argue that the defendant's conviction should be affirmed as that issue. As to the sentencing issue on whether the court considered an improper aggravating factor when it, as the defendant indicated, considered the victim's death as an improper aggravating factor in sentencing the defendant to 20 years in the Illinois Department of Corrections, we believe that although the court did mention the victim's death during sentencing, it was done in a perfunctory manner at the very beginning of the sentencing in this case. And after the court mentioned the victim's death, it then went through a list of other factors that it considered when it sentenced the defendant to 20 years. And in fact, at the end of the court's statement in sentencing, it stated, after considering all of the facts in this case, I would sentence the defendant to 20 years in the Illinois Department of Corrections. She said she considered it, though. Didn't she? Did she just misspeak? She did say that she considered it at the beginning. We have to take her at her word, don't we? Yes, Your Honor. And it could, based upon court's wording, it could look like she did consider that improper aggravating factor. And even if the court did consider that as an improper aggravating factor, as Your Honor has noted earlier, that does not require an automatic remand for resentencing in every case, simply because the court may have considered an improper aggravating factor. In this case, it would not require an automatic remand for resentencing because the court considered other factors. And it's evident that the court did not place that much weight on the death if it did, in fact, consider the victim's death to be an aggravating factor in sentencing the defendant to 20 years. And the judge mentioned it twice, though. That is true, Your Honor. However, the court also mentioned that the victim was defenseless, and it also mentioned twice, I believe, deterrence and protection of the public as well. And then, ultimately, as I noted, the court stated that, after considering all of the facts in this case, after considering the pre-sentence investigation, which included a multitude of factors, such as the defendant's background, education, military, family life, alcohol and drug history, it then considered the defendant's sentence and sentenced him to 20 years in the Illinois Department of Corrections. And we believe that it was not the victim's death, which ultimately led to a sentence of 20 years in the Illinois Department of Corrections in this case. It was the circumstances surrounding the victim's death, which resulted in 20 years in the Illinois Department of Corrections. The fact that this was a defenseless victim, who was standing there when he had a knife plunged into his chest, resulting in his death. Now, this case, although the defendant was convicted of secondary murder, this is a very unusual secondary murder case, because this is a case where, although it was an unreasonable belief, even to that extent, there's no evidence that the victim did anything in this case to deserve being stabbed. And that is the ultimate reason why the court sentenced the defendant to 20 years in the Illinois Department of Corrections, notwithstanding the fact... Well, we don't know that. That's the big problem here. There's nothing in the record that leads us there to say we know that. We know he got the harshest sentence he could for second degree. We don't know how much the court's improper factoring death in took it to 20. That's the problem. Your Honor, from the record, we believe that from the court's statements, it can be determined that the weight that was given to any improper consideration of the victim's death was very minimal. Based upon what the court's statement said, again, the court may have mentioned the victim's death in the beginning when it sentenced the defendant to 20 years. However, it then went through a litany of factors in consideration, in aggravation, in mitigation. And then, again, ultimately, when it handed down the sentence, the court didn't say, well, I'm giving you 20 years in the owner department of Corrections because the victim died. The court said, considering all of the facts in this case. Counsel, is there any different way we should give aggravation that's statutory versus non-statutory aggravation? Your Honor, I know that in the DiVincenzo case, which the defendant cited in his brief, that in that particular case, I know that in addition to the court considering the victim's death as an improper aggravating factor, the court also went into some non-statutory aggravating factors, which then compounded the error in that case, which resulted in the case being remanded for resentencing, which you don't have in this case. The court considered only statutory aggravating factors in this case and not non-statutory aggravating factors, which militates in favor of this court affirming the defendant's sentence and not needing to remand it for resentencing. Your Honor, based upon all of the foregoing reasons that you stated as well as the reasons stated in that brief, we would ask that you affirm the defendant's conviction and sentence for second degree murder in this case. Thank you. Thank you. Thank you, sir. Thank you.  Just very briefly, I did want to touch upon the fact a few of the things the state mentioned. In their brief and also once again here, the state emphasized that the defense at trial argued self-defense. And one of the reasons, and again, the state said, well, over and over and over during closing, the state said the defense argued self-defense. But in this case, after the involuntary manslaughter instruction was denied, the defense had no choice but to focus on self-defense in order to either acquit or mitigate to second degree murder. And self-defense and involuntary manslaughter are not mutually exclusive. Reckless conduct does include a conscious disregard of risk. And as the state mentioned, in self-defense it is an intentional act. Recklessness can be an intentional act as well, in that you do consciously disregard the risk of your actions. And then one factual note, Leobardo did testify that the defendant got the first knife and returned, and then Renato, his cousin, took it away. However, he's the only person that testified that that happened, and no third knife was ever discovered on the scene after the police did their search. And the defendant did tell the officers in his initial statements, although he listed several reasons, he did say that he only meant to scare the person and that he had no intent to kill. And one of the officers did testify to that, that the defendant said he had no intent to kill. And on the sentencing issue, there is no way for us to know if this was just a perfunctory few statements by the court, which is why we are asking for remand. And the court did, as the court was, listing out some of the other aggravating factors. After initially mentioning this improper factor, his death at the beginning of the sentencing, once again, the court mentioned it when he was listing, when she was listing the aggravating factors. So there is no way for us to know how much emphasis was placed on that. So for these reasons, we believe that this case should be remanded for a new trial or a new sentencing hearing. Thank you. Thank you very much. Thank you. The case will be taken under advisement.